KEVIN V. RYAN (CSBN 118321)
United States Attorney

MARK L. KROTOSKI (CSBN 138549)
Chief, Criminal Division

ANDREW M. SCOBLE (CSBN 124940)
ALEXIS HUNTER (NYSBN 3939824)
Assistant United States Attorneys

   450 Golden Gate Ave.
   San Francisco, California 94102
   Telephone: (415) 436-7249
   Fax: (415) 436-7234
   E-Mail: andrew.scoble@usdoj.gov
             alexis.hunter@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.: CR 06-0426 SI |
|    Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT FONG'S MOTION TO REVIEW DETENTION ORDER |
|    v. | |
| ALEX WAI SHING FONG, | Hearing: Nov. 21, 2006 |
|    Defendant. | Time: 3:30 p.m.<br>Courtroom: Ten (19th Floor) |

## I. INTRODUCTION

On October 11, 2005, United States Magistrate Judge Elizabeth D. Laporte entered an order for detaining defendant Alex Wai Shing Fong pending trial. Following the assessment and recommendation of the Pretrial Services Agency, she found that the defendant poses a risk of flight, and rejected his proposal that his parents serve as sureties, and that the Court accept as security his mother's interest in real property where

an active marijuana grow was seized on June 27, 2005, plus $5000 in cash from his father.[1]

Defendant Fong now appeals from that order. He claims that the current indictment is simply a repetition of prior state charges, and that his record of appearing in court while on bail in the state case proves that he is no flight risk. He claims that the government, the Pretrial Services Agency, and Magistrate Judge Laporte all erred when they rejected his parents as sureties based on evidence connecting the parents to the marijuana cultivation in which he himself is implicated.

Magistrate Judge Laporte correctly found that defendant Fong poses a risk of flight such that his proposed conditions of release were insufficient. His current federal charges are not – contrary to his claim – "the same crime" as that charged in state court. As Judge Laporte duly noted, a grand jury has indicted Fong with new marijuana cultivation crimes allegedly committed *while he was free on bail in the state court case*. The federal charges are broader and more serious than the prior state charges: The defendant faces a mandatory minimum ten-year sentence in prison if convicted, as well as deportation. The Pretrial Services Agency quite properly rejected, as sureties, both the father who was arrested with him in May 2003 while driving to one marijuana grow site, and the mother who owns the real property in Oakland where an active marijuana grow site was seized in June 2005. The defendant is a Hong Kong (Chinese) citizen with a record of international travel and with significant, current ties to Hong Kong in the form of his sister and his daughter.

The defendant is not being detained because he lacks "real property to secure a large bond" (Deft. Mot. 1). He is being detained because, based on his own conduct, he poses a serious risk of flight such that his proposed conditions of release are unacceptable. Defendant Fong's circumstances and his record of conduct amply support

---

[1] The defendant has proposed different security, which the Pretrial Services Agency has rejected as still insufficient. The government strongly supports the Pretrial Services Agency's assessment of Fong's risk of flight and its rejection of the proposed security as insufficient to reasonably assure his continued appearances as required.

UNITED STATES' OPP. TO
DEFT. FONG'S BAIL APPEAL                2

Magistrate Judge Laporte's detention order. This Court should affirm it.

## II. BACKGROUND

At the hearing, Magistrate Judge Laporte had the benefit of the Pretrial Services Agency report and recommendation. The Pretrial Services report concluded that Fong poses a serious risk of flight. It pointed out that the defendant is a citizen of Hong Kong; although he has lived in this District some 15 years, and has parents and a significant other here, he has twice moved back to Hong Kong during that time, and has traveled to his native country extensively. He maintains strong, current ties with Hong Kong, in the form of his young daughter and his sister. He has traveled to Canada and Thailand as well.

The report pointed out that the defendant's work history is unconfirmed. It noted his May 22, 2003 arrest at a marijuana cultivation site in San Leandro, with more than $10,000 in cash stuffed inside his pants. (As the government pointed out, the defendant was arrested along with his father, Kam Fat Fong, and co-defendant Jay Yuan after they were observed driving toward, and then fleeing, the marijuana grow site at approximately 1:15 a.m. The father was arrested with nearly $1000 cash in his wallet. The investigation revealed that the defendant's mother, Wan Sui Fong Lam, had leased the residential property, all of which had been turned into a marijuana grow operation. A copy of the relevant police report is attached as Exhibit A.)

The Pretrial Services Report also noted that the defendant will likely face deportation if he is convicted of the current charges. It challenged the fitness of the parents to serve as sureties, noting that father Kam Fat Fong had been arrested with the son at the San Leandro grow site in May 2003. It also pointed out that the father reported to Pretrial Services that he had never been arrested. The report further noted evidence that the mother, Wan Sui Lam Fong, might be involved in the marijuana growing operations. It pointed out that – in addition to the mother's being on the lease at the residential grow site seized in May 2003 – in June 2005, a state search warrant executed

at the property owned by the mother resulted in the seizure of an active grow operation. (A copy of the search warrant and the report of its execution are attached hereto as Exhibit B.)

The report concluded that without property to secure a substantial bail, which was unrelated to any marijuana grow operation, and with appropriate sureties, no condition or combination of conditions could reasonably assure future court appearances. (The report stated that the defendant claims a "very large extended family residing in the Bay Area.") As to danger to the community, the report noted that the defendant is a convicted drug felon with a number of prior law enforcement contacts on his record. It expressed concern at his three prior arrests and one conviction for DUI. Nonetheless, the report concluded that this factor could be addressed with an appropriate combination of conditions.

After hearing argument on October 10, 2006, Magistrate Judge Laporte agreed with the Pretrial Services Agency and ordered Alex Fong detained as a flight risk – subject to reconsideration if he proposed adequate conditions, including sufficient security and appropriate sureties. The judge filed a written order the following day. In her order (a copy of which is attached hereto as Exhibit C), Magistrate Judge Laporte noted that the defendant is subject to a rebuttable presumption of detention under 18 U.S.C. § 3142(e), inasmuch as he is charged with conspiring to traffic in more than one thousand marijuana plants between July 5, 2002 and June 27, 2005, and with substantive charges in connection with four specific marijuana grow sites during various periods between approximately July 16, 2003 and June 27, 2005.

The magistrate judge also noted that, according to the government's proffer, the charges included four specific marijuana grow sites, at least three of which were operated during the period when the defendant was free on bail in connection with two <u>different</u> marijuana grow sites with which he was facing charges in state court. Exh. C at 3:5-10.

Magistrate Judge Laporte agreed with the Pretrial Services Agency in concluding that defendant Fong poses a risk of flight, for the reasons noted in the report and

described above. She also found:

> He was arrested in May 2003 near the site of a marijuana cultivation operations (which became the subject of state charges), and found to have more than $10,000 in cash hidden inside his pants. This suggests that he may have access to large sums of cash. The defendant's father was arrested along with the defendant in that same vehicle, and found to have nearly $1,000 in cash on his person.[2] The defendant's mother was on the lease for the house in question – which was found to house only a marijuana grow operation, and not to be used as a residence.
>
> As the Pretrial Services report also indicates, the defendant, should he be convicted of the charges in this case, with likely face deportation. The Pretrial Services Agency and the government both expressed doubt as to the fitness of the defendant's parents to serve as sureties. The father was arrested (although not, apparently, charged) at the San Leandro marijuana cultivation operation described above. However, he reported to the Pretrial Services Agency that he had never been arrested. The mother was perhaps involved in the marijuana growing operations, including the San Leandro operation (where she was on the lease) and a grow operation seized pursuant to a state search warrant on June 27, 2005 at 1402 East 21st Street in Oakland, which is property owned by the defendant's mother and where the defendant's father reportedly now lives. The government has pointed out, further, that the residence in Alameda where the defendant and his father have reported that they previously lived, is a property owned by co-defendant Vince Ming Wan and his former wife.

Exh. C at 3-4. The magistrate judge also took note of the Pretrial Services Agency conclusion that the defendant's danger to the community could be addressed through appropriate conditions fo release. Id. 4.

In sum, Magistrate Judge Laporte concluded:

> The Court is troubled by a number of the points described above, including the fact that the defendant has been indicted for alleged marijuana cultivation during the period when he was released on bail in his state case. The Court has considered, and rejected, the defendant's proposal that he be released on bond secured by the piece of real property owned by his mother (which, as noted above, was found in June 2005 to house a marijuana cultivation operation with which the defendant is now charged) and by $5,000 cash offered by his father. The Court notes that the government has expressed its willingness to consider a bond signed by appropriate sureties and secured by untainted property. The Court finds that the record establishes by a preponderance of the evidence that the defendant poses a risk of flight, and the Court agrees with the Pretrial Services Agency that a substantial bond – with security untainted by any connection to marijuana cultivation – is warranted to ensure his continued court appearances.

---

[2] In fact, as the San Leandro Police Report (Exh. A) states, in addition to these amounts of cash, officers also seized from the back of the SUV in which defendant Fong, his father, and defendant Yuan were driving, a large number of small marijuana plants and $7,436 in currency. See Exh. A and Bates No. 09280.

UNITED STATES' OPP. TO
DEFT. FONG'S BAIL APPEAL    5

>Should the defendant put together a bail package which addresses the Court's concerns, the Court will entertain his release on appropriate conditions.

Exh. C at 4-5.

### III. ARGUMENT

**A. Standard of Review**

18 U.S.C. § 3145(b) provides that a person who is ordered detained by a Magistrate Judge may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly. Id.

The district court reviews a magistrate judge's detention order de novo. United States v. Koenig, 912 F.2d 1190, 1191 (9th Cir. 1990). The review is to be conducted without deference to the magistrate's factual findings. Id. at 1192. "Clearly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist. . . . It should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference. . . . The point is that the district court is to make its own 'de novo' determination of facts, whether different from or an adoption of the findings of the magistrate. It also follows . . . that the ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion." Id. at 1193.

**B. The Defendant Poses a Serious Risk of Flight**

The defendant proffers no new evidence to undermine the propriety of the Pretrial Service Agency's recommendations and Magistrate Judge Laporte's findings. First, he is <u>not</u> charged "with the same crime" as previously in state court. Deft. Mot. 1. He is charged with conspiring with Vince Ming Wan and others to cultivate and traffic in one thousand or more marijuana plants. While it is true that the two grow sites to which

UNITED STATES' OPP. TO
DEFT. FONG'S BAIL APPEAL        6

defendant Fong entered guilty pleas in state court are part of the background of that conspiracy charge, no defendant is charged with those grow sites. More importantly, defendant Fong is charged in connection with four different grow sites. At least three of these – the subject of Counts 5, 6-7, and 13 of the pending indictment – charge new conduct which occurred while Fong was free on bail in the state case. These are at present "only . . . charge[s]" (Deft. Mot. 7:07), yet they also represent a grand jury's finding of probable cause to believe that defendant Fong committed these charges. Cf. 18 U.S.C. § 3148(b) (revocation of bail in federal criminal cases).

Further, the defendant faces far more serious charges than in the state case. If convicted of the current charges, he faces a ten-year mandatory minimum prison term and deportation. Magistrate Judge Laporte, considering the defendant's prior record of appearances in state court, correctly weighed the differences between those state charges and the pending federal indictment, especially the differences in potential penalties. Then, too, as noted above, the defendant's indictment on the new charges *while on bail in the state case* was an appropriate factor in assessing the defendant's risk of flight.

The defendant's other arguments add little to his claim. While it is true that his co-defendants (not including fugitive Phung Van Nguyen) are free on bail (Deft. Mot. 1), some of their conditions of bail include significant security. Moreover, the government views defendant Fong as someone with greater culpability than many of his co-defendants, and has told his counsel so since her entry into the case.

With the exception of Edwin Toy and fugitive Phung Van Nguyen, the government is not aware that any other co-defendant was intercepted on the wiretap. See Deft. Mot. 1. Vince Ming Wan, a named Interceptee, elected not to challenge the wiretap during the motions period in CR 05-0375 SI. It is uncertain that defendant Fong's co-defendants "will rightly want to spend years litigating" the legality of the Title III interceptions.

The defendant now claims that he has no access to large amounts of cash. Deft. Mot. 5. The objective record – including the $10,000 cash found hidden in his pants at his May 2003 arrest, plus the $7436 seized from the back of the SUV in that same

UNITED STATES' OPP. TO
DEFT. FONG'S BAIL APPEAL  7

incident, in addition to the charges (based on a finding of probable cause) of further marijuana cultivation lasting until June 2005 – supports the concern of the Pretrial Services Agency and the magistrate judge. The government would add that the record in this case, like that in the two related cases, indicates that purchases of marijuana cultivation equipment and supplies, and sales of marijuana, were often made in cash and sometimes exceeded $10,000.[3]

This defendant's ties to the community (Deft. Mot. 5) were acknowledged by both the Pretrial Services Agency and Magistrate Judge Laporte. They do not outweigh the factors which indicate that Alex Fong is a flight risk.[4]

The defendant's suggestion that his parents are acceptable sureties flies in the face of the record. His father, Kam Fat Fong, was arrested in May 2003 in San Leandro, traveling in the same vehicle with Alex Fong and Jay Yuan at approximately 1:15 a.m., first approaching and then apparently fleeing (given the police presence at the residence) the grow site. Moreover, the record indicated that the father (but not the mother) was living at the Oakland residence owned by the mother which was found in June 2005 to house a marijuana grow operation. The mother's name was on the lease (along with Jay

//
//
//
//
//

---

[3] Undersigned counsel has previously informed Alex Fong's counsel that the government views defendant Fong as a "lieutenant" or "right-hand man" to Vince Ming Wan in the charged conspiracy. Government counsel is aware of records, seized from Vince Ming Wan's residence, suggesting that Wan and Fong split costs of certain marijuana operations.

[4] The defendant's claim of a very large extended family residing in the Bay Area would suggest, however, that he has resort to sureties and security which would satisfy the criteria proposed by the Pretrial Services Agency. It is telling that, to date, no such sureties have come forward.

UNITED STATES' OPP. TO
DEFT. FONG'S BAIL APPEAL        8

| | |
|---|---|
| 1 | Yuan) for the San Leandro property in May 2003.  She was also the registered owner of |
| 2 | the SUV in which Alex Fong, his father, and Jay Yuan were arrested.  See Exh. A at |
| 3 | Bates No. 09280. |
| 4 | The Court should affirm Magistrate Judge Laporte's detention order. |

DATED: November 14, 2006

KEVIN V. RYAN
United States Attorney

/s/
―――――――――――――――
ANDREW M. SCOBLE
ALEXIS HUNTER
Assistant United States Attorneys