MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

ANDREW M. SCOBLE (CABN 124940)
Assistant United States Attorney
   450 Golden Gate Ave., Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-7249/6838
   Fax: (415) 436-7234
   E-Mail: andrew.scoble@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.: CR 06-0426 SI |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE |
| v. | |
| ALEX WAI SHING FONG, | |
| Defendant. | Hrg. Date: June 28, 2013<br>Time: 11:00 a.m.<br>Courtroom: Ten (19th Floor) |

## INTRODUCTION

Defendant Alex Wai Shing Fong moves for early termination of supervised release.[1] He has served some 40 months of the 48-month term imposed by this Court on February 12, 2010. The defendant suggests that being on supervised release has limited his employment opportunities: He claims that he "was offered the opportunity as a driver in and around the Bay

---

[1] Mr. Fong's motion was filed by AFPD Brandon LeBlanc. But Mr. Fong has been represented by Claire Leary (appointed under the CJA), while the Federal Public Defender has represented another defendant, Asa Barnla, in the related case of *United States v. Enrique Chan, et al.*, CR 05-0375 SI. It appears that any motion for relief should have come from Ms. Leary, who has represented this defendant. Nonetheless, in case the Court wishes to go forward with the motion, the government addresses the motion on its merits.

GOVT. OPP. TO MOTION
FOR EARLY TERMINATION           1

Area" but this opportunity was "denied to him as well *once he shared* that he was on supervised release." *Id*. 3. He points out that he is not in violation status, and notes that he "lives near his parents in the Bay Area with his partner of more than eight years." *Id*. 5. The defendant urges that continued supervision is no longer necessary and in fact constitutes "a waste of government resources." Deft. Mot. 6.

The defendant's supervising Probation Officer disagrees with Mr. Fong's assessment. So does the government. It is true that the defendant is not in violation of the terms of his supervised release, but that is expected of every releasee and does not constitute grounds for early termination. The benefits of continued supervision for another eight months outweigh the minimal cost to the defendant. As to the expenditure of governmental resources, the U.S. Probation Office is evidently willing to undertake the burdens associated with doing its job – supervising this defendant through the full term of his supervised release.

### **BACKGROUND**

On February 12, 2010, the Court sentenced Mr. Fong to time served, followed by 48 months of supervised release. As the Court may recall, Mr. Fong had been in continuous custody for some 51 months at that point on marijuana-related charges; these included a 12-month term of custody on a state charge in connection with one of the grow sites involved in the federal case. (Pursuant to the plea agreement, Mr. Fong was given credit for the 12 months served in state custody.)

Ultimately, the defendant admitted to participating in a conspiracy to cultivate and distribute one thousand or more marijuana plants between at least 2000 and June 22, 2005. He was a manager in the organization; he set up and maintained marijuana cultivation sites, arranged for bypassing PB&E utility meters, ran daily operations, paid and instructed others to pay for grow site-related expenses, and arranged the leasing of premises for use as grow sites. He purchased marijuana in Canada for resale in the Bay Area. He admitted his involvement in the operation of more than a dozen different marijuana cultivation and distribution sites. The defendant's involvement in three of the

charged cultivation operations occurred while he was free on bail in his state marijuana case. Further, he admitted brokering cash payments to an individual believed to be able, through a law enforcement contact, to "fix" criminal marijuana cases.

During the pendency of this case, the defendant was detained on grounds of flight risk. As the government pointed out, he is a citizen of Hong Kong (China), and although he had already lived in this District for some 15 years prior to indictment – and his parents and significant other similarly have lived here – he had traveled frequently to Hong Kong in the past and had even moved back there twice from this District. He had family (including a daughter) living there.

It was also noted, in the detention hearing, that the state marijuana case (which was part of the overall conduct charged in the federal prosecution) resulted from the defendant's arrest in May 2003 near the site of a marijuana cultivation operation in San Leandro. The defendant was found to have more than $10,000 in cash hidden inside his pants. The defendant's father was arrested with the defendant in that same vehicle, and was found to have nearly $1,000 in cash on his person. The defendant's mother was on the lease for the house in question – which was found to house only a marijuana grow operation, and not to be used as a residence.

Indeed, it appeared that the defendant's parents were involved in marijuana cultivation with him. The mother was on the lease for the San Leandro residence where a live grow operation was discovered, and another grow operation was seized pursuant to a state search warrant on June 27, 2005 at 1402 East 21st Street in Oakland, which is property owned by the defendant's mother and where the defendant's father reportedly lived.

The residence in Alameda where the defendant and his father told Pretrial Services they had previously lived, was a property owned by co-defendant Vince Ming Wan and his former wife.

//

//

**DISCUSSION**

Mr. Fong is not in violation status. That is a good thing, but does not itself justify early termination. It is not the "exceptionally good behavior" noted in a case which the defendant himself cites, *United States v. Miller*, 205 F.3d 1098, 1101 (9th Cir. 2000). *See* Deft. Mot. 3-4.

Similarly, while Mr. Fong's "stable community reintegration" (*see* Deft. Mot. 5) is generally commendable, it must be pointed out that the record in his own case – including the information set forth above – suggests that his parents are not necessarily a good influence. Similarly, it appears that his relationship with his partner overlapped at least in part with his full-time criminal activity.

The defendant suggests that being on supervised release has limited his employment options. Unfortunately, he is currently in removal proceedings, and so lacks employment authorization. While it appears that some employers may be willing to hire him on a cash basis, it is unclear what efforts he has undertaken in this regard. Instead, he cites to one lost opportunity (at a time unknown) to work as a driver in and around the Bay Area. Deft. Mot. 3. His claim that the opportunity was denied "*once he shared* that he was on supervised release" (*id*.) does not appear to make sense. First, it is unclear how being on supervised release would interfere with working as a driver; it seems that he should have been able to reschedule his (minimal) obligations to meet with his supervising Probation Officer around his work schedule. Second, given the fact that his record (as explained in his detention hearing) includes three drunk driving arrests and one drunk driving conviction, it would seem that an employer would welcome the extra support of supervised release to ensure that Mr. Fong refrained from taking drugs or drinking while driving.

Undersigned counsel understands from a conversation with Mr. Fong's supervising officer, U.S. Probation Officer Maria Ross, that the defendant's current supervision consists of little more than monthly reports, occasional community contacts, and periodic drug testing (in which he has consistently tested clean). Additionally, and perhaps most importantly, Probation Officer Ross checks regularly to ensure that Mr. Fong has had no new law enforcement contacts.

Probation Officer Ross has suggested that her office may also be able to provide free

training that might enhance Mr. Fong's chances of finding paying work. This is an opportunity of which he should avail himself. It certainly would seem less risky than continued patronage of local gambling casinos such as Lucky Chances. (*See* Deft. Mot. Exh. C.)

## **CONCLUSION**

The defendant only has eight months more of supervised release to serve. It is unclear when his removal proceedings will be resolved. In the meantime, it is difficult to see how supervised release poses an unfair burden or impediment to either his lifestyle or his chances of earning money. The Probation Office offers free job training. His supervising Probation Officer opposes early termination. The ongoing supervision, while not burdensome to the defendant, does help ensure his continued lawful conduct. The Court should deny Mr. Fong's motion.

DATED: June 21, 2013

Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/
_____
ANDREW M. SCOBLE
Assistant United States Attorney